IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM HENDERSON, #B83639, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:14-cv-00986-JPG |
| | ) |
| RICHARD WATSON, | ) |
| S. REID, | ) |
| MEARL JUSTUS, | ) |
| OFFICER LEVI BRIDGES, and | ) |
| LT. NICHOLS | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff William Henderson is currently incarcerated in the Lawrence Correctional Center in Sumner, Illinois, but was previously held at the St. Clair County Jail in Belleville, Illinois, from February 2012 to September 2012, and again from February 2014 to April 2014. (Doc. 8 at 1, 5-8.) Proceeding *pro se*, Henderson has filed an amended petition pursuant to 42 U.S.C. § 1983. (*Id.*) Henderson claims that he was exposed to inadequate conditions at the St. Clair County Jail during his two periods of incarceration there. (*Id.* at 5.)

This matter is now before the Court for a preliminary review of Henderson's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint" if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

**Procedural History**

Henderson filed his initial § 1983 complaint in this Court on September 10, 2014, naming Sheriff Richard Watson and the St. Clair County Jail as Defendants. (Doc. 1.) Henderson alleged that he was housed at the St. Clair County Jail once in 2012 and once in 2014, and on both occasions was subjected to unsanitary and inadequate conditions at the jail. (*Id.*) He claimed that he was exposed to urine-contaminated water, that he was refused access to a working restroom, that he could not obtain drinking water on several occasions, and that he was deprived of a bed for several days. (*Id.*) His first complaint was dismissed for want of specific allegations directed against Sheriff Watson or the St. Clair County Jail. (Doc. 6.)

On November 4, 2014, Henderson filed a first amended complaint, this time naming Watson, along with S. Reid, Mearl Justus, Levi Bridges, and Lt. Nichols. (Doc. 8 at 1.) In his first amended complaint, Henderson claims that he was first placed in the St. Clair County Jail on February 18, 2012. (*Id.* at 5.) He was initially housed in a holding cell, which had a leaking toilet, a blanket placed underneath the toilet to catch the "foul smelling water from the toilet," a non-functioning sink, and no drinking water. (*Id.*) Henderson was sent to L-Block "a day or so later," where he was "subjected to a filthy living area" with guards who "refused to pass out cleaning material," such as a "broom, mop, bucket, disinfectant, and rags." (*Id.* at 5-6.) During his time at L-Block, Henderson also alleges that he was subjected to a "filthy shower" that had "black mold" in it, that the paint was "peeling off the tables and walls," that "rusty steel with holes in it were in the foundation by the toilets," and that rodents infested the block. (*Id.*)

In March 2012, Henderson was moved from L-Block to the jail's gymnasium, where he was forced to "lay and sleep on a filthy floor in the gym on a plastic mattress from March 2012 to April 2012" with fifty other prisoners. (*Id.* at 6.) While he was housed in the gymnasium,

there was "one toilet and sink" for all fifty prisoners. (*Id*.) Henderson claims that the toilet was "filthy and smelled of body waste due to the poor plumbing system at the jail," and the "sink did not work and was [also] filthy." (*Id*.) Henderson was also "denied drinking water" and "went without showers for days" during the time that he was placed in the jail's gymnasium. (*Id*.)

In April 2012, Henderson was moved from the gymnasium to J-Block, where he stayed for one week, and then to AA-Block Cell 7 where he stayed until July 2012. (*Id*. at 7.) In AA-Block, he was denied cleaning supplies, was exposed to vents that were "covered with black mold" and a cell that had mice in it, and was subjected to "filthy showers" which had "black mold" and "standing foul smelling water." (*Id*.) In July 2012, he was moved back to the gymnasium area, where the conditions were the same as they were from March to April 2012. He remained in the gymnasium area until he was bonded out of jail on September 20, 2012. (*Id*.)

On February 27, 2014, Henderson was found guilty of his state court charge and was again sent to St. Clair County Jail. (*Id*.) He was placed in the same holding cell as before with twelve other prisoners. (*Id*.) Henderson claims that the toilet was again leaking, was "dirty and smelled like urine," and had blankets underneath it catching water. That same day, he was moved to the gymnasium area, where he was "subjected to no bed and forced to sleep on the floor in a plastic boat." (*Id*. at 7-8.) According to Henderson, the "sink and toilet" in the area did not work, and there were mice and insects throughout the area. (*Id*.) On March 27, 2014, Henderson was moved to AA-Block, where he was "subjected to the same unsanit[ary] living conditions that he was subjected to when he was put in AA-Block in May 2012." (*Id*. at 8.) He remained in AA-Block until he was sent to Menard Correctional Center on April 17, 2014. (*Id*.)

**Discussion**

Henderson's complaint alleges that Watson, Reid, Justus, Bridges, and Nichols exposed him to inadequate conditions during his two incarceration periods at the St. Clair County Jail. (*Id*. at 5-8.) Henderson also claims that Defendants had "a policy and practice to not address any complaint about the constitutional violations at the jail" and that they "ignored their own rules to purposely violate" Henderson's rights. (*Id*. at 10-11.) He has sued each Defendant in their individual and official capacities, and seeks damages and injunctive relief. (*Id*. at 12-13.)

To facilitate the orderly management of this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Henderson's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Reid, Justus, Bridges and Nichols, acting in their individual and official capacities, exposed Henderson to inadequate conditions during his 2012 incarceration at the St. Clair County Jail in violation of the Fourteenth Amendment.
>
> **COUNT 2:** Watson and Reid, acting in their individual and official capacities, exposed Henderson to inadequate conditions during his 2014 incarceration at the St. Clair County Jail in violation of the Eighth Amendment.

Henderson's claims focus on his pre-trial conditions of confinement in 2012 and his seemingly post-trial conditions of confinement in 2014 at the St. Clair County Jail. While pre-trial detainee claims fall under the Fourteenth Amendment and post-trial claims fall under the Eighth Amendment, "courts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners." *Rice ex*

*rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). Henderson's individual claims concerning the inadequate conditions at the jail "proceed[] through a two-step inquiry" – first, a court considers "whether the adverse conditions complained of were sufficiently serious" to qualify as unconstitutional; and second, a court evaluates whether "prison officials were deliberately indifferent to the adverse conditions" alleged by Henderson. *See id.* at 664-65.

As it concerns the first step of this inquiry, conditions are sufficiently serious where a prisoner is denied "the minimal civilized measure of life's necessities," including "adequate sanitation and personal hygiene items." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). Even if certain conditions are not individually serious enough to work constitutional violations, the Seventh Circuit has observed that "conditions of confinement may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Id.* at 842-43 (*quoting Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Applying this standard to Henderson's complaint, Henderson's cumulative allegations regarding the conditions at the jail in 2012 and 2014 are sufficient to pass preliminary review.

As it concerns the second step of this inquiry, the complaint must suggest that a particular official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298. In other words, a plaintiff bringing a § 1983 claim must allege that each defendant was "personally involved in the deprivation" of his rights. *Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995). Personal involvement can be alleged by claiming that the individual knew "about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). During his 2012 incarceration, Henderson claims that Nichols and Bridges "toured the outer area of L-Block and noticed the filthiness, but did nothing to subside it," that Reid and Bridges "failed to provide

cleaning materials" when asked by prisoners, and that all three were personally aware of the conditions in the gymnasium and in AA-block and did nothing to ameliorate them. (Doc. 1 at 5-7.) During his 2014 incarceration, Henderson claims that Reid was again aware of the conditions at the jail, at least in AA-block. (*Id*. at 7-8.) This is enough to allege personal involvement for these officers for screening purposes. *See White v. Monohan*, 326 F. App'x 385, 388 (7th Cir. 2009) (allegation that defendants "were aware of the conditions of [the prisoner's] cell and did 'nothing' to address the conditions except make them worse" was sufficient).

Concerning his individual claims, Henderson has also named Sheriff Justus for his 2012 incarceration, and Sheriff Watson for his 2014 incarceration. He claims that Justus received a "captain complaint form" concerning the conditions in the holding area, and that Justus "had control over the jail and he did nothing to address the filthy living areas at the jail." (Doc. 8 at 5-6.) He makes similar allegations against Watson. (*Id.* at 8.) Typically, allegations that an officer was aware of a grievance and did not intervene, or had generalized control over a facility yet did not remedy conditions, is insufficient for individual liability. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (a "guard who rejects an administrative complaint about a completed act of misconduct" is not personally involved for purposes of § 1983). But where, as here, a prisoner alleges systematic violations, an inference may be drawn that a director knew or participated in the alleged violations. *Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996) (sheriff could be "expected to know of or participate in creating systemic" pest, food, and other long-term conditions for purposes of individual claim); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) (noting that "defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions").

Given Henderson's allegations concerning systemic conditions at the jail, it would be premature to dismiss the individual claims against Justus and Watson on preliminary review.

As for Henderson's claims against the Defendants in their official capacities, to bring an official capacity claim, Henderson must allege that his constitutional deprivation was "undertaken pursuant to an official jail policy or widespread custom." *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008). In other words, he must point to "an express policy which caused the injury, a widespread practice that is so well-settled as to amount to a policy," or show that the sheriff had the "final policymaking authority for the decisions" regarding conditions at the jail. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). Henderson's claims on this point are a bit thin: he alleges widespread conditions at the jail that persisted from his original placement there in 2012 to his placement there in 2014, argues that the jail staff had a "policy and practice to not address any complaint about the constitutional violations at the jail," and claims that jail staff refused to follow "their own rules." (Doc. 8 at 5-8, 10-11.) However, construing Henderson's complaint liberally, his allegations are sufficient for preliminary review. *See*, *e.g.*, *Young v. Sheehan*, No. 98 C 6527, 2000 WL 288516, at *5 (N.D. Ill. Feb. 24, 2000) (allegations of "punitive conditions existing at Cook County Jail and inadequate conditions of confinement" were "sufficient to support the inference of an official county jail policy, practice, or custom"); *Landfair v. Sheahan*, 878 F. Supp. 1106, 1111 (N.D. Ill. 1995) (permitting *pro se* § 1983 complaint to proceed because allegations in complaint could lead to an inference of a "custom or policy of providing inadequate supplies and housing").

Henderson has also sought injunctive relief directed at St. Clair County Jail. However, Henderson was transferred out of St. Clair County Jail on April 12, 2014, and he does not assert that he will be retransferred back there. "If a prisoner is transferred to another prison, his request

for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred," and these allegations of retransfer "may not be based on mere speculation." *Higgason v.* Farley, 83 F.3d 807, 811 (7th Cir. 1996). Accordingly, Henderson's requests for injunctive relief are now moot, and must be dismissed without prejudice.

One final note concerning the individual and official capacity claims against Defendant Justus: no service shall be ordered on him, as he died before the commencement of this action. *See Burris v. Justus*, No. 14-cv-990, 2014 WL 5465821, at *5 (S.D. Ill. Oct. 28, 2014) (noting that Justus passed away in December 2012). Concerning the official capacity claim against him, Federal Rule of Civil Procedure 25(d) provides that an action against a party in an official capacity "does not abate" upon his death; rather, the officer's successor "is automatically substituted as a party." Defendant Watson is the current Sheriff of St. Clair County, and will be substituted for this claim. Concerning the individual capacity claim against Justus, Federal Rule of Civil Procedure 25(a) provides this Court with authority to substitute the proper party if a claim survives the death of a defendant. *See Walsh v. City of Chicago*, 712 F. Supp. 1303, 1306 (N.D. Ill. 1989) (substation of deceased defendant with decedent's representative may be appropriate in § 1983 action). Plaintiff shall notify the Court within 60 days as to how he wishes to proceed concerning his individual claim against Defendant Justus, by either filing a motion to substitute the correct party in Justus' place, or moving to dismiss the claim against him. Failure to respond will result in the dismissal of the individual claim against Justus.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **RICHARD WATSON**, **S. REID**, **LEVI BRIDGES**, and **LT. NICHOLS**. This count

shall proceed against **S. REID**, **LEVI BRIDGES**, and **LT. NICHOLS** in their individual and official capacities, and against **RICHARD WATSON** in his official capacity only.

    **IT IS FURTHER ORDERED** that, for the reasons stated, **COUNT 2** shall **PROCEED** against **RICHARD WATSON** and **S. REID**.  This count shall proceed against these parties in their individual and official capacities.

    **IT IS FURTHER ORDERED** that all claims for injunctive relief are hereby **DISMISSED** without prejudice.

    **IT IS FURTHER ORDERED** that **on or before April 17, 2015**, Plaintiff shall notify the Court in writing how he wishes to proceed concerning his individual claim against deceased Defendant Justus, by either filing a motion to substitute the correct party in his place, or to dismiss the claim against him.  *See* FED. R. CIV. P. 25(a).  Failure to respond will result in the dismissal of Defendant Justus from this action.

    **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **WATSON**, **REID**, **BRIDGES**, and **NICHOLS** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

    **IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the

Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Appointment of Counsel (Doc. 3) is **REFERRED** to a United States Magistrate Judge for consideration.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for

leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 26, 2015**

*s/J. Phil Gilbert*
**J. Phil Gilbert**
**United States District Judge**